JON M. SANDS
Federal Public Defender
District of Arizona
850 W. Adams, Suite 201
Phoenix, Arizona 85007
Telephone: 602-382-2700

GREGORY A. BARTOLOMEI, #011803
Asst. Federal Public Defender
Attorney for Defendant
gregory_bartolomei@fd.org

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| United States of America, | No. CR-13-1607-PHX-SRB |
|---|---|
| Plaintiff, | |
| vs. | **DEFENDANT JEAN BAPTISTE KINGERY'S LEGAL MEMORANDUM IN SUPPORT OF HIS MOTION FOR PRETRIAL RELEASE** |
| Jean Baptiste Kingery, | |
| Defendant. | |
| | **(Defendant is in Custody)** |

Jean Baptiste Kingery, by and through undersigned counsel, respectfully submits this legal memorandum in support of his motion for pretrial release.

Preliminary Comments:

As of the writing of this memorandum, we received the initial report from Pretrial Services wherein they are recommending the Defendant for release after a home assessment has been conducted to implement a Location Monitoring Program. The Defendant would be residing at the home of his mother in Yuma, Arizona, where there is a working land-line telephone for easy access to the Defendant at any hour of the day or night. The Defendant is also amenable to wearing an ankle monitoring device if Ordered to do so by this Court.

Mr. Kingery is charged by Indictment with Attempted Violation of the Arms Export Control Act (Count 1), Smuggling Goods From the United States (Count 2), and False Statement (Count 3).  The government alleges that this Defendant attempted to export grenade shells, detonating fuse, and some ammunition.  He has entered a plea of not guilty to each and every count.

I.   The Applicable Law.

The provisions of *18 U.S.C. §3142* governs the issue of pretrial release.  *Rule 46(a), Federal Rules of Criminal Procedure*.  The Bail Reform Act clearly states that nothing in this section shall be construed as modifying or limiting the presumption of innocence.  *18 USC §3142(j)*.

II.   This is Not a case involving a "rebuttable presumption".

The issues before this Court related to whether Mr. Kingery should be released during the pendency of his case are straightforward and this case does not involve a rebuttable presumption. Just to get that out of the way, for a rebuttable presumption to arise, the statutes require that the alleged offenses fall under *18 U.S.C. §3142(f)(1)(A-E)*. If they did, then a rebuttable presumption would arise "...that no condition or combination of conditions will reasonably assure the safety of any other person and the community..." and the Court could Order that he be detained. *18 U.S.C. §3142(e)(1-3)*.

///

///

It is respectfully urged that none of the crimes alleged in the Indictment in our case:

(a) constitutes a crime of violence nor are they listed as an offense in *18 U.S.C. §2332b(g)(5)(B)* [which are crimes alleging terrorism];

(b) qualify as crimes subject to a maximum sentence is life imprisonment of death;

(c) constitute offenses involving the Controlled Substances Act;

(d) relates to a defendant who has 2 or more prior convictions related to (a) through (c) above (ie. violence, or crimes where there is a maximum sentence of life or death, or crimes involving the Controlled Substances Act) because Mr. Kingery has no prior convictions; and

(e) involve the use of a firearm or an explosive device.

See: *18 U.S.C. §3142(f)(1)(A-E)*.

In addition, Mr. Kingery does not come before this Court as a person accused of crimes committed "...while the person was on release pending trial for a Federal, State, or local offense...". See: *18 U.S.C. §3142(e)(2)(B)*. He has no other pending charges and is not out on bond in any other matter.

Thus, there is no rebuttable presumption in this case.

III. Does this change because there are allegations of grenade shells and fuses and do they constitute crimes of violence?

The allegations change nothing. It is respectfully urged that allegations of attempted illegal exporting of grenade shells and detonating fuses are not equal to nor do they constitute crimes of violence under either the categorical or modified

3

categorical analysis. Thus, again, they do not establish a rebuttable presumption. See: *18 U.S.C. §3142(f)(1)(A)*.

It is further urged that whether or not the particular grenade shells alleged in this Indictment even qualify as being subject to the restrictions of the Armed Export Treaty Act and whether they qualify as the kinds of materials covered in the Munitions List is a factual matter to be developed as the case proceeds and likely to be resolved by a jury at trial. It is not a matter that needs to be resolved at a detention hearing.

IV.     What about allegations regarding ammunition?

As for the allegations that the Defendant's conduct also included an attempt to export ammunition, that also fails to satisfy the requirements of *18 U.S.C. §3142(f)(1)(A-E)* because by itself, "ammunition" does not fall under the definition of either a firearm nor a destructive device "...as those terms are defined in section 921...". See: 18 U.S.C. §3142(f)(1)(E).

Section 921 states as follows:

> **(3)** The term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.
>
> **(4)** The term "destructive device" means—
>
>     **(A)** any explosive, incendiary, or poison gas--
>         **(i)**   bomb,
>         **(ii)**  grenade,
>         **(iii)** rocket having a propellant charge of more than four ounces,
>         **(iv)**  missile having an explosive or incendiary charge of more than one-quarter ounce,
>         **(v)**   mine, or
>         **(vi)**  device similar to any of the devices described in the preceding clauses;

   **(B)** any type of weapon (other than a shotgun or a shotgun shell which the Attorney General finds is generally recognized as particularly suitable for sporting purposes) by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, and which has any barrel with a bore of more than one-half inch in diameter; and

   **(C)** any combination of parts either designed or intended for use in converting any device into any destructive device described in subparagraph (A) or (B) and from which a destructive device may be readily assembled.

The term "destructive device" shall not include any device which is neither designed nor redesigned for use as a weapon; any device, although originally designed for use as a weapon, which is redesigned for use as a signaling, pyrotechnic, line throwing, safety, or similar device; surplus ordnance sold, loaned, or given by the Secretary of the Army pursuant to the provisions of section 4684(2), 4685, or 4686 of title 10; or any other device which the Attorney General finds is not likely to be used as a weapon, is an antique, or is a rifle which the owner intends to use solely for sporting, recreational or cultural purposes.
(See: 18 U.S.C. §921)

  Accordingly, it is respectfully urged that none of the items listed and alleged in the Indictment meet these definitions and the Defendant should not be burdened with having to overcoming a rebuttable presumption in this case.

  However, if the Court nevertheless determines that there is a rebuttable presumption which the Defendant must overcome, that does not mean that he is required to show that he is not guilty of the offense(s) charged.  All that Mr. Kingery is required to do is "…produce some credible evidence forming a basis

for his contention that he will appear and will not pose a threat to the community." United States v. Carbone, 793 F2d 559, at 560 (3rd Cir. 1986); United States v. Cantu-Lopez, 2012 WL 4458142, at 1 (D. Ariz. 2012). Mr. Kingery's circumstances conclusively meets this requirement.

V.   Factors to be considered by the Court:

As a practical matter, case law has long held that the bail statute neither requires nor permits a pretrial determination that the person is guilty. In addition, doubts regarding the propriety of pretrial release should be resolved in favor of the defendant. "Only in rare circumstances should release be denied." US v. Motamedi, 767 F2d 1403, at 1405 (9th Cir. 1985).

That said, Mr. Kingery reasonably anticipates that the government will focus upon the purported strength of their case and the Court is not precluded from considering the weight of the evidence. However, case law has also consistently held that the weight of the evidence is the least important of all of the factors bearing on the issue of release. *United States v. Motamedi*, 767 F2d at 1408 (9th Cir. 1985); *United States v. Cantu-Lopez*, supra at 1 (D. Ariz. 2012); *United States v. Winsor*, 785 F2d 755, at 757 (9th Cir. 1986).

Congress has mandated that other specific factors must be considered by a Court when determining "…whether there are conditions of release that will reasonably assure the appearance of the person as required AND the safety of any other person and the community…". See: *18 U.S.C. §3142(g)* (Emphasis added).

///

These specific factors include the following:

### a) The defendant's character.

Mr. Kingery is a 44 year old male who is married (second time) and has a total of 6 children ranging in ages from 4 to 18 years old. He appears before this Court *without any prior convictions* of any kind. Although he has been unemployed for the past 4 years, that is solely because he has been in a Mexican prison throughout that entire time because of allegations related to this case.

Mr. Kingery is a family man and during this long period of detention, "...he maintained contact with his mother and sister through letters." See: PTSI Report, page 1. His mother has confirmed this to Pre-trial Services, including the fact that if he is released by this Court, Mr. Kingery will be residing with her at her home in Yuma, Arizona.

### b) The Defendant's physical and mental condition.

Mr. Kingery has *no history of illicit drug use or alcohol dependency* which would raise a concern as to his reliability and ability to comply with any release conditions imposed by this Court. While Mr. Kingery does have some physical ailments, he is otherwise in good physical health and is not receiving any kind of counseling. In addition, he completed high school and attended some college before deciding to open an antique store to sell Native American art.

### c) Mr. Kingery's Financial Resources.

As previously stated, Mr. Kingery has been unemployed for the past 4 years solely because of his incarceration in Mexico related to allegations tied to this case. He presently has no independent financial resources but PTSI has

1  confirmed that he will have support from his mother and his immediate family.

2  In addition, Mr. Kingery is employable and as indicated in the PTSI Report, he worked at the Barona Casino in San Diego for several years.  It should be noted that during his time at that Casino, he worked specifically in the "counting room" where he counted money throughout his shift each day of his employment.  This is known to be a position requiring a lot of trust in those employees because the counting room is the lifeline of every casino.  Thus, he has established through his work history that he is a reliable and trustworthy employee and given that he is an educated man and a former businessman, he is certainly capable of finding employment if allowed to do so by this Court pending the resolution of his case.

Conclusion:

If released, Mr. Kingery will be totally dependent upon his mother and immediate family for his daily support and maintenance.  They welcome that obligation. Mr. Kingery is also amenable to wearing a monitoring device. Between wearing an ankle bracelet and the additional daily supervision of his mother, we believe there are sufficient assurances to satisfy this Court that Mr. Kingery will not flee and that he should be released pending the resolution of his case.

As for the issue of safety to the community, the absence of any criminal record speaks for itself.  A clean criminal history should provide this Court with a sufficient measure of assurance that he is capable of **continuing to be a law-abiding citizen**.  The allegations are not enough to override his 44 years without

a criminal conviction and there is simply no reasonable or reliable basis upon which to urge that Mr. Kingery poses a threat to any specific person or to the community at large.

For all of these reasons, it is respectfully urged that the facts convincingly establish that Mr. Kingery should be released with ankle monitoring and to the care and custody of Arlene Frances for the remainder of this legal process.

Excludable delay under 18 U.S.C. § 3161(h)(D) may result from this motion or from an order based thereon.

Respectfully submitted:  October 2, 2015.

JON M. SANDS
Federal Public Defender

 *s/Gregory A. Bartolomei*
GREGORY A. BARTOLOMEI
Asst. Federal Public Defender

Copy of the foregoing transmitted by ECF for filing October 2, 2015, to:

**CLERK'S OFFICE**
United States District Court
Sandra Day O'Connor Courthouse
401 W. Washington
Phoenix, Arizona 85003

**ANNAMARTINE SALICK**
**WILLIAM A. CROWFOOT**
Assistant U.S. Attorneys
United States Attorney's Office
Two Renaissance Square
40 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408

Copy mailed to:

Jean Baptiste Kingery
Defendant

*s/G. Bartolomei / ny*
G. Bartolomei / ny