LORETTA E. LYNCH
United States Attorney General
EILEEN M. DECKER
United States Attorney
Central District of California
WILLIAM A. CROWFOOT (Cal. Bar No. 134173)
ANNAMARTINE SALICK (N.Y. Bar No. 5076385)
Special Attorneys
Terrorism and Export Crimes Section
National Security Division
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:   (213) 894-4465/3424
    Facsimile:   (213) 894-3713
    E-mail:   William.Crowfoot@usdoj.gov
                Annamartine.Salick2@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>             Plaintiff,<br><br>   vs.<br><br>Jean Baptiste Kingery,<br><br>            Defendant. | **CR-13-1607-PHX-SRB**<br><br>**NOTICE OF INTENT TO INTRODUCE EVIDENCE PURSUANT TO RULE 404(b)** |

The United States of America, by and through undersigned counsel, hereby files its Notice of Intent to Introduce Evidence Pursuant to Rule 404(b) of the Federal Rules of Evidence.  For the reasons set forth in the following Memorandum of Points and Authorities, the United States will seek to introduce evidence of other acts committed by defendant JEAN BAPTISTE KINGERY ("defendant") to prove defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident with respect to defendant's attempt to illegally export from the United States grenade parts and ammunition, and to smuggle such items, as charged in Counts One and Two of the Indictment in this case.  As this notice is necessarily general in nature, the

United States may seek leave of the Court to file an amended notice of intent to introduce evidence pursuant to Rule 404(b) prior to the date of trial.

Respectfully submitted this 14th day of October, 2015,

LORETTA E. LYNCH
United States Attorney General
EILEEN M. DECKER
United States Attorney
Central District of California

_/s/_

William A. Crowfoot
Annamartine Salick
Special Attorneys

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  BACKGROUND**

Defendant JEAN BAPTISTE KINGERY ("defendant") is charged in Count One of the Indictment filed on November 20, 2013 (the "Indictment"), with attempting to export grenade parts and ammunition in violation of 22 U.S.C. § 2778(b)(2) and (c) (the Arms Export Control Act); and 22 C.F.R. §§ 121.1, 123.1, and 127.1 (the International Trafficking in Arms Regulations) (collectively, "AECA").  He is charged in Count Two of the Indictment with attempting to smuggle grenade parts and ammunition from the United States in violation of 18 U.S.C. § 554(a).[1]

Counts One and Two of the Indictment are based on the same event, occurring on June 15, 2010, when defendant attempted to illegally export from the United States to Mexico grenade parts (consisting of a total of 114 MK-II, M-67, and M-61 grenade shells, and a total of 114 M213 and M228 detonating fuses) and approximately 2,504 rounds of ammunition (including Winchester .45 Caliber 230 FMJ Ammunition, Part #Q4170, and Speer Lawman .380 Caliber Ammunition, Part #53608).  All of these items were found hidden in a spare tire in the truck defendant was attempting to drive into Mexico through the San Luis Port of Entry (the "POE"), near Yuma, Arizona, on the border between the United States and Mexico.

**II.  LEGAL FRAMEWORK**

**A.  The Elements**

Count One of the indictment charges an attempted AECA violation, for which the evidence must show:  (1) defendant intended to willfully export from the United States a defense article for which a license or written approval from the Department of State was

---

[1] Count Three of the Indictment, which alleges a violation of 18 U.S.C. § 1001(a): False Statements, based on certain false statements allegedly made by defendant on December 5, 2008, in an interview with Special Agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), will be dismissed pursuant to the terms of the extradition of defendant to the United States by the government of Mexico.

required without first obtaining the required license or written approval; and (2) defendant did something that was a substantial step toward committing the crime.  Mere preparation is not a substantial step toward committing the crime.  To constitute a substantial step, a defendant's act or actions must demonstrate that the crime will take place unless interrupted by independent circumstances.  22 U.S.C. § 2778(b)(2), (c); 22 C.F.R. § 127.1(a)(1); Ninth Circuit Model Criminal Jury Instruction No. 5.3 (2010) [Attempt].  Under AECA, "[a]n act is done willfully if done voluntarily and intentionally with the purpose of violating a known legal duty. . . . [T]he Government [is] not required to prove that the defendant had read, was aware of, or had consulted the specific regulations governing his activities."  United States v. Mak, 683 F.3d 1126, 1133, 1138-39 (9th Cir. 2012) (internal quotations omitted).  In determining whether a defendant acted with the requisite intent, "the jury should consider the totality of all the relevant circumstances."  Id. (internal quotations omitted).

Section 554(a) prohibits two types of conduct, both of which are alleged in Count Two of the Indictment.  The first applies to exporters.  To prove a violation, the evidence must show:  (1) defendant fraudulently or knowingly attempted to export or send from the United States, merchandise, an article or object; and (2) defendant did so knowing that such export or sending was contrary to any law or regulation of the United States.  18 U.S.C. § 554(a).  The indictment also alleges a violation under the second prong of Section 554(a), which applies to conduct occurring prior to exportation.  To prove a violation, the evidence must show:  (1) defendant knowingly received, concealed, bought, or sold merchandise, articles, and objects, or in any manner facilitated the transportation, concealment, or sale of such merchandise, articles, and objects, prior to exportation; and (2) at that time, defendant knew the merchandise, articles, and objects to be intended for exportation contrary to any law or regulation of the United States.  18 U.S.C. § 554(a); See United States v. Kuok, 671 F.3d 931, 943-45 (9th Cir. 2012).

- 4 -

### B. **Rule 404(b)**

Rule 404(b) of the Federal Rules of Evidence allows for the admission of uncharged other acts or wrongs.  Rule 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request of the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

In the Ninth Circuit, a four-part test is used to determine the admissibility of evidence pursuant to Rule 404(b):

> Such evidence may be admitted if: (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged.

United States v. Bailey, 696 F.3d 794, 799 (9th Cir. 2012) (internal citation omitted). The government has the burden of proving that the evidence meets all of the above requirements.  If the evidence meets this test under Rule 404(b), the Court must then decide whether the probative value is substantially outweighed by the prejudicial impact under Rule 403.  Id. (internal citations omitted).

The government intends to introduce the evidence of other crimes, wrongs or acts described below for the purpose of proving one or more of defendant's motive, opportunity, intent, preparation, plan, knowledge, and identity, and the absence of mistake or accident, as permitted by Rule 404(b).  It will be prepared to show that said evidence meets the admissibility requirements set forth in Bailey and cited above.

## III.   **PROPOSED OTHER ACT EVIDENCE**

### A. **November 2008 Purchase of Seven AK-47 Type Rifles**

The circumstances of defendant's purchase of seven AK-47 type rifles in November 2008, and his subsequent evasiveness with law enforcement agents about the location of the rifles, show that defendant was aware of the regulated nature of firearms transactions and that he believed he needed to conceal the location or disposition of those

firearms.  Specifically, on November 25, 2008, defendant purchased three AK-47 type rifles, left the store, and returned fifteen minutes later to purchase four more AK-47 type rifles.  Defendant paid in cash.  By law, an individual who purchases a firearm from a retailer licensed to sell firearms (a Federal Firearms Licensee, or "FFL") must fill out ATF Form 4473 Firearms Transaction Records Part I Over the Counter, which is the official firearms transaction record for intrastate, over-the-counter sales that the FFL must maintain in its records.  On the first page of the form, the purchaser is asked: "Are you the actual transferee/buyer of the firearm . . .?"  The question is followed by a warning in bold print that states: "You are not the actual buyer if you are acquiring the firearm(s) on behalf of another person."  The purchaser's certification portion of the form explicitly states that falsely answering "yes" to the actual buyer question is a crime punishable as a felony.  Defendant answered "yes" to the questions asking whether he was the actual buyer.  The serial numbers of the firearms purchased were recorded on the forms.

When interviewed subsequently by ATF agents, defendant admitted making the purchases, but stated that the rifles were not currently in his possession and were instead in the possession of a "friend" who resided in Indian Country.  He said the guns were in a locker in another location, that he did not know where the locker was located, and that he did not know the full name of the "friend."  Defendant agreed to show the firearms to the law enforcement agents at an agreed-upon future date but on the appointed date defendant was not home and defendant's mother told the agents that defendant had possibly gone to Mexico.

**B.  Search on January 21, 2009**

A January 2009 search of defendant's sister's home revealed that defendant possessed a substantial number of firearms, firearms parts, ammunition, and tools for working on firearms.  That inventory, defendant's attempt to conceal himself prior to the search, and a statement he made at the time of the search show that defendant was knowledgeable about firearms, firearms parts, ammunition, and firearm mechanics, and that he believed that in some unspecified manner related to firearms he was violating the

law.

On January 21, 2009, ATF agents accompanied Yuma Police Department detectives to defendant's sister's residence in Somerton, Arizona, in order to speak with her about defendant.  Before knocking on the door, an agent looked through a window and observed defendant inside the residence typing on a computer.  After knocking, the detectives and agents looking through a window saw defendant crawling towards the back of the house.  When the agents and detectives entered the residence they found defendant in a room concealed under a pile of clothes.

During the search, the detectives and agents recovered multiple weapons and other items including marijuana, drug paraphernalia, and the following firearms: one Romarm, model PSL 54C, AK 47 type, 7.62x39 caliber rifle, SN# K297679; one Ratmil, model WUM2, AK 47 type, 5.45x39 caliber rifle, SN# 30217397; one Norinco, model 56S, AK 47 type, 7.62x39 caliber rifle, SN# 517288; one FN, model F.A.L., .308 caliber rifle, SN# 1352; and one Glock, model 23, .40 caliber pistol, SN# AUS561US.  Agents also saw several AK-47 parts kits, de-milled AK-47 upper receivers, AK-47 barrel assemblies, trigger assemblies, magazines, ammunition, manuals, and a variety of tools including a large metal press.  Defendant, who invoked, remained at the residence during the search and spontaneously told an agent that the AK-47 parts kits and assemblies were his and that he was stockpiling them because he liked to "tinker" with weapons.

None of the AK-47 type rifles that defendant purchased on November 25, 2008, were recovered during the January 2009 search.  Nor have they ever been located.

**C. Defendant's Purchases of Inert Hand Grenades**

Between October 2009 and June 2010 defendant purchased a large number of grenade bodies and other parts.  The circumstances of the purchases show that defendant wished to conceal both his identity and the large extent of his purchases.

1.   On-line Purchases

In October 2009, an ATF agent learned that a military surplus store in New York received an order for 120 inert hand grenades from a person named "Jeane Kingsley"

with an address identical to defendant's address in Yuma, Arizona (the "Yuma Address"). The New York surplus store owner informed the agent that "Kingsley's" purchase appeared suspicious because of the large quantity of grenade bodies involved. Additionally, the owner stated that the purchase was suspicious because of the manner and means of payment. The owner explained that "Kingsley" ordered the grenade bodies online and went through the web-site's secure check out process but, when prompted to enter credit card information, "Kingsley" instead printed out the web page and sent a copy to the store with a money order enclosed for payment.

In a subsequent conversation, the owner informed the agent that previously, in September 2009, "Kingsley" used the same alias and money-order payment method to purchase hand grenade components, specifically 1,000 hand grenade safety clips and 900 hand grenade spring kits.

In December 2009, the agent reviewed data relating to one of defendant's e-mail accounts obtained pursuant to a search warrant issued in the District of Arizona. The e-mail records included communications with two on-line retailers of military surplus gear. The agent spoke to representatives of each retailer and learned that a person using the name "Jeane Kingsley" and the Yuma address placed an order with one retailer for 25 lemon-shaped "dummy" hand grenades and 175 pineapple-shaped "dummy" hand grenades and paid for the grenades using a money order. A person using the same name used defendant's e-mail account to place an order with the second retailer for 100 "dummy inert" grenade bodies and paid using a money order.

On December 29, 2009, the New York surplus store received an order for 100 hand grenade spoons, 100 hand grenade head assemblies, 4,000 hand grenade spring kits, and 4,000 hand grenade safety clips. The owner of the New York surplus store informed the agent that the order was made by a person using the name "John King" who provided his address as the Yuma address and paid for the items using three money orders.

2.   Purchases in Phoenix

On January 6, 2010, a surplus store in Phoenix, Arizona, sold 64 grenade bodies,

two ballistic vests with front and back ceramic trauma plates, and three large olive drab military duffle bags to a customer who paid for the items in cash.  The manager of the Phoenix surplus store stated that the customer, who refused to provide his name, purchased the store's entire inventory of grenade bodies which included pineapple, lemon, and baseball styles.  Because of the suspicious nature of the purchase and the customer's reluctance to provide his name, a store employee noted the customer's vehicle description (silver Chevrolet Tahoe) and license plate (Arizona license plate number A*****5).  According to registration records, this vehicle was registered to defendant. When presented a photograph depicting defendant, the store manager and the store owner identified him as the customer who purchased the grenades bodies, body armor, and other items on January 6, 2010.  The store manager also recognized defendant as having made a previous purchase of 30-40 grenade bodies in June or July of 2009.

Also on January 6, 2010, defendant purchased eight lemon-style "dummy" grenades, two ballistic vests, and four side trauma plates from a second surplus store in Phoenix, Arizona.  The owner of that store informed an ATF agent that defendant purchased the store's entire inventory of dummy grenades and paid in cash.  Because of the purchase of body armor, the owner requested that defendant provide identification. Defendant complied, providing his Arizona Driver License.  The owner also informed the agent that defendant previously purchased grenade bodies and military uniform pants and tops on October 27, 2009.  According to the store owner, on that occasion, defendant purchased 56 pineapple-style grenade bodies, 14 lemon-style grenade bodies, and 20 baseball-style grenade bodies and paid in cash.  The agent obtained a close-circuit television video recording of defendant making the January 6, 2010 purchases.

On June 8, 2010, an employee of the second Phoenix surplus store telephoned an ATF Special Agent to report that, ten minutes earlier, defendant purchased 29 pineapple-style grenade bodies, which constituted the store's entire inventory.  The employee remembered defendant from his previous purchases.

### D.  August 2011 Search of Defendant's Home in Mexico

On August 31, 2011, Mexican Federal Police arrested defendant in Mazatlán, Sinaloa, Mexico, and executed a search warrant at his residence.  An ATF Special Agent and other ATF personnel were present.  The agent observed grenade spring kits, camouflage paint, military-style duffel bags, and electronics in defendant's residence.

### E.  Statements by Defendant about Other Acts

In addition to the other acts described above investigated by law enforcement agents, defendant, in statements made to law enforcement agents after he was advised of his rights under <u>Miranda</u>, has described other acts constituting Rule 404(b) evidence.

(1)  On June 15, 2010, defendant admitted that he had transported grenade bodies from the U.S. to Mexico numerous times and always concealed them in a spare tire.  He said it seemed like a good place to hide them.  Defendant said that he was going to be paid $2,000 for smuggling the grenade bodies and ammunition to Mexico.  Defendant further admitted to smuggling other weapons and parts into Mexico.

(2)  On June 16, 2010, defendant stated that the grenades and ammunition recovered the previous day at the San Luis Port of Entry were intended for a Sinaloa Drug Cartel member.  Defendant advised that he had been engaged in smuggling weapons and grenade parts since November 2008.  He said that he made appropriately $25,000 for smuggling the grenades he had purchased and that he estimated he had purchased around 800 grenades.

(3)  On August 31, 2011, defendant stated that he was present when cartel members remanufactured grenade parts and that he instructed cartel members in how to make grenades function more effectively.  Specifically, defendant said that he showed cartel members how to crimp the copper tubing and super-glue the base of the remanufactured inert grenade fuse assembly.  He stated that he knew that the grenades were being used by the Sinaloa cartel against rival drug trafficking organizations.

(4)  On September 2, 2011, defendant stated that he had made approximately $5,000 selling and trafficking drugs, $60,000-70,000 smuggling and remanufacturing grenades, $5,000 smuggling and remanufacturing AR-15 receivers, and between $3,000

and $4,800 smuggling AK-47s into Mexico.  He stated that this estimate was pure profit and did not include costs.  He further explained the instruction he provided to cartel members to improve the grenades and that his work was valuable to the Sinaloa cartel.

(5)  On October 14, 2011, defendant provided a list of items he had purchased and smuggled into Mexico, including rifle parts, ballistic vests, and electronic jamming devices.

## IV.  **CONCLUSION**

For the reasons set forth above, the government hereby gives notice that it will request that the Court admit the above described evidence pursuant to Rule 404(b).  As stated at the outset, because this notice is necessarily general in nature, the United States may seek leave of the Court to file an amended notice of intent to introduce additional or more specific evidence pursuant to Rule 404(b) prior to the date of trial.

Respectfully submitted this 14th day of October, 2015,

LORETTA E. LYNCH
United States Attorney General
EILEEN M. DECKER
United States Attorney
Central District of California

         /s/
William Crowfoot
Annamartine Salick
Special Attorneys

1

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of October, 2015, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrant:

Greg Bartolomei
Assistant Federal Public Defender
Attorney for the Defendant

*/ s/*
William A. Crowfoot