LORETTA E. LYNCH
United States Attorney General
EILEEN M. DECKER
United States Attorney
Central District of California
WILLIAM A. CROWFOOT (Cal. Bar No. 134173)
ANNAMARTINE SALICK (Cal. Bar No. 309254)
Special Attorneys
Terrorism and Export Crimes Section
National Security Division
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-4465/3424
    Facsimile:   (213) 894-3713
    E-mail:      William.Crowfoot@usdoj.gov
                   Annamartine.Salick2@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>          Plaintiff,<br><br>   vs.<br><br>Jean Baptiste Kingery,<br><br>          Defendant. | CR-13-1607-PHX-SRB<br><br>**GOVERNMENT'S RESPONSE TO PRE-SENTENCE INVESTIGATION REPORT AND POSITION WITH RESPECT TO SENTENCING OF DEFENDANT JEAN BAPTISTE KINGERY** |

Plaintiff United States of America, by and through its counsel of record, the Office of the United States Attorney for the Center District of California, hereby files this response to the Pre-Sentence Investigation Report and Position with Respect to Sentencing of Defendant Jean Baptiste Kingery.

This response to the Pre-Sentence Investigation Report and Position with Respect to Sentencing of Defendant Jean Baptiste Kingery are based on the attached

///

///

///

Sentencing Memorandum, the files and records of this case, the Pre-Sentence Investigation Report, and any argument or evidence presentenced at the sentencing hearing in this matter.

Respectfully submitted this 9th day of September 2016,

LORETTA E. LYNCH
United States Attorney General
EILEEN M. DECKER
United States Attorney
Central District of California

   */s/*
Annamartine Salick
William A. Crowfoot
Special Attorneys

## I. INTRODUCTION

Defendant Jean Baptiste Kingery ("defendant") attempted to export 114 hand grenade components and approximately 2,500 rounds of ammunition concealed in a spare tire of a vehicle defendant sought to drive from the United States to Mexico. Defendant later admitted that he intended to supply the grenades and ammunition to members of an illegal drug cartel in Mexico and that he had repeatedly smuggled weapons into Mexico. For that, a sentence of 60 months' imprisonment, three years of supervised release, and a $100 mandatory special assessment, is a just punishment for defendant's single count of conviction for violating Title 22, United States Code, Sections 2778(b)(2) and 2778(c), and Title 22, Code of Federal Regulations, Sections 121.1, 123.1, and 127.1.

## II. FACTUAL BACKGROUND

### A. Initial Investigation of Defendant

Defendant came to the attention of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") in November 2008 after defendant made suspicious firearms purchases of seven AK-47 type rifles in Tucson, Arizona. (Pre-Sentence Investigation Report ("PSR") ¶ 5). On December 5, 2008, ATF Special Agents interviewed defendant regarding the suspicions purchases and defendant admitted making the purchases but stated that seven AK-47 type rifles were not in his possession. (Id.). Defendant claimed that the rifles were instead in the possession of a friend who resided in Indian Country.[1] (Id.). Defendant agreed to show the firearms to the Special Agents on December 8, 2008, however, when the agents returned, defendant was not present, and defendant's mother advised that defendant may have gone to Mexico. (Id.). The Special Agents attempted to contact defendant by telephone without success; defendant failed to return the ATF's calls. (Id.).

---

[1] On October 14, 2011, defendant admitted that he had lied to federal agents regarding the whereabouts of the firearms. This conduct formed the basis of Count Three of the Indictment, which charged defendant with making a materially false statement, in violation of 18 U.S.C. § 1001. (CR 8 ("Indictment"); see also ATF 76 ROI). The government has agreed to move the Court to dismiss that count at the time of sentencing. (Plea Agrt. ¶ 3.c)

### B.   Defendant Found During a January 2009 Search

On or about January 21, 2009, ATF Special Agents, accompanied Yuma Police Department detectives, went to defendant's sister's residence in Somerton, Arizona, in order to speak with her about defendant. (Id. ¶ 6). After knocking, the detectives and agents looked through a window and observed defendant. (Id.). A search warrant was then obtained and the Special Agents recovered multiple weapons and other items including marijuana, drug paraphernalia, and the following firearms: one Romarm, model PSL 54C, AK 47 type, 7.62x39 caliber rifle, SN# K297679; one Ratmil, model WUM2, AK 47 type, 5.45x39 caliber rifle, SN# 30217397; one Norinco, model 56S, AK 47 type, 7.62x39 caliber rifle, SN# 517288; one FN, model F.A.L., .308 caliber rifle, SN# 1352; and one Glock, model 23, .40 caliber pistol, SN# AUS561US. (Id.). Agents also saw several AK-47 parts kits, de-milled AK-47 upper receivers, AK-47 barrel assemblies, trigger assemblies, magazines, ammunition, manuals, and a variety of tools including a large metal press. (Id.). Defendant was not arrested. (Id.).

### C.   Defendant Purchases Inert Hard Grenades

In October 2009, the ATF learned that a military surplus store in New York received an order for 120 inert hand grenade bodies[2] by a person named "Jeane Kingsley" with an address associated with defendant. (Id. ¶ 7). Over the next several months, the ATF learned that from approximately 2009 to 2010, defendant purchased thousands of grenade parts from various online suppliers using a variety of aliases. (Id.).

### D.   Defendant Attempts to Transport Grenades and Ammunition to Mexico

On June 15, 2010, acting on a "be-on-the-lookout" notice posted by the ATF, Customs and Border Protection ("CBP") Officers stopped defendant as he attempted to drive a 2003 Chevrolet Tahoe across the border into Mexico at the San Luis, Arizona, port of entry. (Id. ¶ 9). Defendant's sister was a passenger in the vehicle. During a

---

[2] Grenade bodies are also known as "hulls" or "shells."

subsequent search of the vehicle, agents located: 114 inert grenades and parts (specifically MK II Grenade Shells, M 67 Grenade Shells, M 61 Grenade Shells, M213 Detonating Fuse, and M228 Detonating Fuse); and approximately 2,504 rounds of ammunition (specifically Winchester .45 Caliber 230 FMJ Ammunition, Part #Q4170, and Speer Lawman .380 Caliber Ammunition, Part #53608).  (Id.).

The seized ammunition is and was a defense article or a controlled munition under Category III of the United States Munitions List ("USML").  (CR 68 ("Plea Agrt.") ¶ 10). The seized grenade shells are and were defense articles under Category IV(h) of the USML.  (CR 8 ("Indictment")).  United States law prohibits the export of defense articles outside the United States without an export license issued by the United States Department of State's Directorate of Defense Trade Controls.  (Plea Agrt. ¶ 10). Pursuant to the factual basis specified in the plea agreement, defendant admitted that at the time of the offense, he knew it was illegal to export the ammunition concealed in his tire without a license and that he did not apply for or obtain a license to export the ammunition.  (Id.; see also PSR ¶ 16).

When questioned, defendant admitted that he was attempting to smuggle the grenades and ammunition into Mexico and intended to provide the items to members of the Sinaloa Drug Cartel.  (PSR ¶ 10).  Defendant admitted to knowing it was illegal to export ammunition and firearms; defendant claimed that he did not know it was illegal to export the grenade parts.  (Id.).  Defendant also admitted to providing the seven rifles purchased in 2008 to illegal drug cartels in Mexico.  (Id.).  Defendant spoke with ATF agents several more times in 2010 until defendant disappeared and was believed to have fled to Mexico.  (Id. ¶ 11).  In one meeting, defendant admitted to purchasing hundreds of grenade parts and estimated that he had earned approximately $25,000.00 for all of the grenades he had purchased and smuggled into Mexico.[3]  (See ATF 38 ROI).

---

[3] As noted below, the government concurs in the factual findings in the PSR.  The government supplements those with additional facts and cites to investigative reports previously provided to the USPO.

### E.     <u>Defendant is Arrested in Mazatlán, Mexico</u>

On August 31, 2011, Mexican Federal Police, assisted by ATF personnel, arrested defendant in Mazatlán, Sinaloa, Mexico, and executed a search warrant at his residence. (PSR ¶ 12). Defendant attempted to flee arrest and, in doing so, rammed his vehicle into several other vehicles. (<u>Id.</u>). During the search, Special Agents observed grenade spring kits, camouflage paint, military-style duffel bags, and electronics. (<u>Id.</u>).

Following his arrest, defendant agreed to speak with ATF Special Agents. (<u>Id.</u>). Defendant admitted to smuggling grenades into Mexico and to assisting the cartels in remanufacturing the grenades to function more efficiently. (<u>Id.</u>). Defendant was flown to Mexico City, where he continued to speak with the Special Agents, and advised that he was attracted to the money and the lifestyle but that the "trigger" was the murder of a friend in Mexico in 2009. (<u>Id.</u>). Defendant admitted to smuggling other items into Mexico, including firearms receivers, bullet-proof vests and plats, tools for working on firearms, and electronics. (<u>Id.</u>). Defendant also admitted that he illegally smuggled marijuana into the United States from Mexico. (<u>Id.</u>). Defendant advised that he knew the grenades he purchased in the United States would be transported to Mexico and was 90% sure that they would be remanufactured into live grenades. (<u>See</u> ATF 76 ROI)

Defendant remained in Mexican custody following his August 2011 arrest. PSR ¶ 13. In December 2013, Mexico executed a Provisional Arrest Warrant based on a criminal complaint and arrest warrant obtained in the District of Arizona on October 19, 2011. (<u>Id.</u> ¶ 13; <u>see also</u> CR 3 ("Criminal Complaint")). Defendant was extradited to the United States on September 30, 2015. (PSR ¶ 13).

### III.     PROCEDURAL HISTORY

Defendant was indicted on November 20, 2013 in a three-count Indictment in the District of Arizona. (CR 8 ("Indictment")). Specifically, defendant was charged with attempting to violate the Arms Export Control Act, in violation of 22 U.S.C. §§ 2778(b)(2) and 2778(c), and 22 C.F.R. §§ 121.1, 123.1, and 127.1;

smuggling goods from the United States, in violation of 18 U.S.C. § 544(a); and making a materially false statement to federal law enforcement officers, in violation of 18 U.S.C. § 1001.

On September 30, 2015, defendant was extradited to the United States and made his initial appearance in the District of Arizona. (PSR ¶ 13). On May 9, 2016, defendant plead guilty to a written Plea Agreement to Count One of the Indictment. (CR 68). In the Plea Agreement, the government has agreed to move the Court to dismiss Counts Two and Three at the time of sentencing. (Plea Agrt. ¶ 3.c).

The United States Probation Office ("USPO") disclosed the PSR and its Sentencing Recommendation on July 20, 2016. The government concurs with the USPO's factual finding. For the reasons stated below, the government does not agree with the USPO's recommendation to apply a one-level upward departure. Pursuant to the terms of the Plea Agreement and for the reasons discussed below, the government submits that a sentence of 60 months' imprisonment, which is three months above the high end of the applicable Guidelines range, is a fair and just sentence to account for defendant's career as an illegal weapons smuggler operating in the United States and Mexico.

**IV.  GOVERNMENT'S SENTENCING POSITION AND RECOMMENDATION**

The recommended sentence of 60 months' imprisonment, three years of supervised release, and a $100 mandatory special assessment, is sufficient, but not greater than necessary, to address the factors set forth in 18 U.S.C. § 3553(a)(2). The factors set forth in § 3553(a) are addressed below.

///

///

A.  Sentencing Guideline Calculation

In the Plea Agreement, the parties agreed to the following sentencing factors:

Base Offense Level:            26      U.S.S.G. § 2M5.2
Acceptance of Responsibility:  -3      U.S.S.G. §§ 3E1.1(a) & 3E1.1(b)
Total Offense Level:           23

(Plea Agrt. 12). These calculations are supported by the facts discussed above, in the Plea Agreement, and in the PSR. These and other applicable factors are addressed below.

1.  Acceptance of Responsibility (§ 3E1.1)

At the time of sentencing, if defendant continues to demonstrate an acceptance of responsibility for the offense up to and including the time of sentencing, the government will recommend a reduction totaling three-levels pursuant to § 3E1.1 (Plea Agrt. ¶ 13).

2.  USPO's Recommended One-Level Upward Departure (§ 5K2.21)

The USPO recommends a one-level upward departure, pursuant to § 5K2.21 for Dismissed and Uncharged Conduct, to offense level 24. (Sentencing Recommendation at 14). Specifically, the USPO explains that defendant's "history of repeated involvement" in smuggling weapons into Mexico and his "relationships with the drug cartels" warrants a one-level upward departure. (Id.).

Viewing the same underlying facts considered by the USPO--defendant's repeated smuggling and doing so for the purpose of supplying cartels--the government recommends that the Court rely upon those facts to vary from the Guidelines range based upon the § 3553(a) factors, but not apply the departure under the Guidelines recommended by the USPO. The government does not agree with the recommended one-level departure because § 5K2.21 applies to dismissed or uncharged charges. Thus, the departure does not fit the facts of the present case where the aggravating facts relate to conduct similar to the charged conduct, not distinct conduct that was dismissed or uncharged as a result of the plea agreement.

The government submits that the defendant's history as a weapons smuggler is appropriately addressed by a variance. These facts go to the nature and circumstances of the offense and defendant's history and characteristics (§ 3553(a)(1)) where defendant engaged in these specific instances of smuggling as part of a pattern of conduct. Accordingly, and consistent with the Plea Agreement, the government recommends the Court impose a sentence of 60 months' imprisonment based on the factors in 18 U.S.C. § 3553(a), which is three months above the high end of the applicable Guidelines range.

### 3. Guidelines Range

A total offense level of 23 is obtained using the following:

| | | |
|---|---|---|
| Base Offense Level: | 26 | USSG. § 2M5.2 |
| Acceptance of Responsibility: | -3 | USSG. § 3E1.1(a) & § 3E1.1(b) |
| Total Offense Level: | 23 | |

With a criminal history category of Category I (PSR ¶ 32), the Guidelines yield an advisory range of 46 to 57 months.

### B. Nature and Circumstances of the Offense

The nature and circumstances of the offense are detailed at length above and warrant the recommended sentence, including the variance of three months recommended by the government. Where defendant willfully attempted to illegally smuggle more than 2,500 rounds of ammunition from the United States to Mexico, intended to supply the ammunition, and the inert grenades defendant concealed in a spare tire with the ammunition, to drug cartels in Mexico, and admitted to carrying out a lucrative smuggling business for multiple years, the nature and circumstances of the offense speak for themselves and warrant a significant term of impressment. Based on these facts, the government recommends that the Court impose a term of imprisonment of 60 months, which includes a three-month variance above the applicable Guidelines range of 46 to 57 months.

        C.     History and Characteristics of Defendant

Defendant ran an illegal smuggling business for many years transporting highly lethal and destructive weapons in Mexico. By defendant's own admission, defendant knowingly provided destructive devices for multiple years to associates of drug cartels and admitted to advising his associates on ways to repurpose the weaponry he provided to function more efficiently. Defendant's claim that he was diagnosed with various mental health problems in 2012, if credited, does not mitigate defendant's conduct in 2010.[4] Defendant repeatedly demonstrated a callous disregard of the foreseeable death and destruction his actions were likely to have caused. Therefore, the history and characteristics of defendant justify the recommended sentence.

        D.     Seriousness of the Offense, Respect for the Law, Adequate Deterrence, and Just Punishment

Although charged with and having plead guilty to a single count of attempting to violate the Arms Export Control Act, in violation of 22 U.S.C. §§ 2778(b)(2) and 2778(c), and 22 C.F.R. §§ 121.1, 123.1, and 127.1, defendant was engaged in a multi-year smuggling operation transporting highly destructive weapons to drug cartels in Mexico. Defendant's conduct is extremely serious and a significant term of imprisonment followed by the maximum period of supervised release is necessary to promote respect for the law, and to deter defendant himself and others. The recommended sentence is both just and commensurate with defendant's conduct and will deter others who may contemplate doing the same.

---

[4] It should be noted that during his interview with the USPO, defendant denied a history of illegal drug use, although an ATF report provided to the USPO details an incident wherein defendant was detained reentering the United States and admitted to being under the influence of alcohol and cocaine. (PSR ¶ 47).

### E. Protecting the Public and the Need to Provide Defendant with Training or Correctional Treatment

Defendant's conduct endangered civilian and law enforcement communities in this country and in Mexico. Defendant has no current employment prospects and may require mental health and/or substance abuse treatment. The recommended term of incarceration followed by a three-year period of supervised release will serve both to protect the public and address defendant's need for professional training and treatment.

### F. Kinds of Sentencing Available and Policy Considerations

For a single count of conviction for attempting to violate the Arms Export Control Act, in violation of 22 U.S.C. §§ 2778(b)(2) and 2778(c), and 22 C.F.R. §§ 121.1, 123.1, and 127.1, defendant may be sentenced to up to 10 years in prison. Pursuant to the terms of the Plea Agreement, the parties stipulated that at the time of the offense conduct, a violation of 22 U.S.C. §§ 2778(b)(2) and 2778(c), and 22 C.F.R. §§ 121.1, 123.1, and 127.1, was punishable by a maximum term of imprisonment of 10 years.
(Plea Agrt. ¶ 4(a)). (The statute was amended effective July 1, 2010, which increased the maximum penalty to twenty years' imprisonment. Pub. L. 111-195 (July 1, 2010).) A sentence of one-half the maximum sentence of imprisonment available, to be followed by the maximum period of supervised release available, is warranted here because defendant engaged in very serious criminal conduct for a prolonged period of time.

### G. Need to Avoid Sentencing Disparities

Section 3553(a)(6) is designed to avoid disparities in sentences between any one defendant and other defendants in other cases and in other districts. The recommended sentence falls three months above what the government submits are the applicable Guidelines, and appropriately accounts for defendant's history of repeatedly smuggling weapons into Mexico. Such a sentence is reasonable in light of these facts and, taking into account the other factors and considerations set forth herein, is likely to avoid a disparity with other defendants and other cases nationwide.

## V. CONCLUSION

For the foregoing reasons, the government respectfully submits that an appropriate sentence for defendant is 60 months' imprisonment, three years of supervised release, and a $100 mandatory special assessment.

Respectfully submitted this 9th day of September, 2016,

                                LORETTA E. LYNCH
                                United States Attorney General
                                EILEEN M. DECKER
                                United States Attorney
                                Central District of California

                                */s/*
                                Annamartine Salick
                                William Crowfoot
                                Special Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of September, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrant:

Joy Bertrand Esq.
Attorney for the Defendant

/ s/ _____
Annamartine Salick