LORETTA E. LYNCH
United States Attorney General
EILEEN M. DECKER
United States Attorney
Central District of California
WILLIAM A. CROWFOOT (Cal. Bar No. 134173)
ANNAMARTINE SALICK (Cal. Bar No. 309254)
Special Attorneys
Terrorism and Export Crimes Section
National Security Division
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-4465/3424
    Facsimile:   (213) 894-3713
    E-mail:      William.Crowfoot@usdoj.gov
                   Annamartine.Salick2@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR-13-1607-PHX-SRB |
|---|---|
| Plaintiff, | **GOVERNMENT'S RESPONSE TO DEFENDANT JEAN BAPTISTE KINGERY'S SENTENCING MEMORANDUM** |
| vs. | |
| Jean Baptiste Kingery, | |
| Defendant. | |

      Plaintiff United States of America, by and through its counsel of record, the Office of the United States Attorney for the Central District of California, hereby files this response to Defendant Jean Baptiste Kingery's Sentencing Memorandum (CR 75).

      This response to defendant Jean Baptiste Kingery's Sentencing Memorandum is based on the government's Response to the Pre-Sentence Investigation Report and its

///

///

Sentencing Memorandum, the files and records of this case, the Pre-Sentence Investigation Report, and any argument or evidence presentenced at the sentencing hearing in this matter.

Respectfully submitted this 14th day of September 2016,

      LORETTA E. LYNCH
      United States Attorney General
      EILEEN M. DECKER
      United States Attorney
      Central District of California

      */s/*
      Annamartine Salick
      William A. Crowfoot
      Special Attorneys

**I.   INTRODUCTION**

The government continues to recommend that the Court sentence defendant to 60 months' imprisonment, three years of supervised release, and a $100 mandatory special assessment, as a just punishment for defendant's single count of conviction for violating Title 22, United States Code, Sections 2778(b)(2) and 2778(c), and Title 22, Code of Federal Regulations, Sections 121.1, 123.1, and 127.1.

**II.   ARGUMENT**

In his Sentencing Memorandum, defendant argues "no further incarceration" is required to meet the goals of 18 U.S.C. § 3553(a). (CR 75). Specifically, defendant requests that the Court: (1) credit defendant with the time he served in Mexican custody from the date defendant was first arrested by the Mexican authorities on August 31, 2011; (2) consider defendant's "lack of criminal history and age"; and (3) consider defendant's pretrial conditions, specifically, defendant's allegations that he was tortured in Mexican custody. (CR 75). None of defendant's arguments are persuasive, and they are each addressed below.

### A.   Calculation of Prior Custody

Defendant asks the Court to "apply the time between his arrest in Mexico and the issuance of the extradition warrant to his time served. (CR 75 at 6.) Calculating the credit to which defendant is entitled for serving any previous time in prison is the responsibility of the Bureau of Prisons, not the responsibility of district courts. United States v. Wilson, 503 U.S. 329, 333 (1992) ("[W]e conclude that § 3585(b) does not authorize a district court to compute the credit at sentencing."); id. at 335 (ruling that the "Attorney General, through the BOP, has the responsibility for administering the sentence," that the Attorney General "must make the determination as an administrative matter when imprisoning the defendant," and that "the BOP developed detailed procedures and guidelines for determining the credit available to prisoners"). The government takes no position as to how that calculation should be made after the Court imposes its sentence.

### B. Risk of Recidivism

Defendant argues that his lack of criminal history and age weigh in favor of defendant being "among the least likely of federal defendants to re-offend." (CR 75 at 5). As noted in the PSR, defendant admitted to smuggling weapons and ammunition into Mexico beginning in 2008 and delivering these items to members of drug cartels. (PSR ¶ 11). Defendant stated that he earned a significant profit selling and trafficking drugs, smuggling and remanufacturing grenades, and smuggling firearms parts. (PSR ¶ 13). Defendant argues that he should be given a more lenient sentence because the Guidelines do not account for what he claims is a low likelihood of recidivism because he had zero criminal history points. (CR 75 at 4.) Defendant's instant conviction, however, is one specimen from a pattern of smuggling that he admits he carried on for years. Defendant's history of smuggling is not accounted for either by the Guidelines or the statistics defendant references about other defendants with zero criminal history points, and it is one of the factors warranting the 60-month term of imprisonment that both the government and the U.S. Probation Office have recommended.

### C. Extraordinary Pretrial Conditions

Defendant also alleges that he was tortured in Mexican custody. (CR 75 at 2). Defendant advised the U.S. Probation Officer that he would provide documentation of his treatment but, as of the date of this filing, no further information has been received. (PSR ¶ 46). Defendant states that further but still-undisclosed details of his treatment will be described at sentencing. (CR 75 at 2).

The government is aware of no information that corroborates or supports defendant's claims and the government had sought to ensure defendant was not threatened, coerced, or injured while he was detained in Mexican custody. For example, on the date of defendant's arrest in Mexico – August 31, 2011 – an Alcohol, Tobacco, Firearms, and Explosives ("ATF") Special Agent asked defendant on two separate

occasions if he had been injured or threatened.[1]  Defendant responded that he had not been injured or threatened.  On September 2, 2011, an ATF Special Agent again asked defendant if he had been threatened, coerced, or injured while in Mexican custody, and defendant stated that he had been treated very well by the Mexican officials.  When ATF Special Agents returned to Mexico in October 2011, defendant did not report any mistreatment prior to that time.[2]  Moreover, the government did not rely upon any of defendant's statements made after his 2011 arrest to support the factual allegations represented in the Plea Agreement.

### III.   CONCLUSION

For the reasons addressed above and in the government's its Response to the Pre-Sentence Investigation Report and Position with Respect to Sentencing, (CR 74), the government respectfully submits that an appropriate sentence for defendant is 60 months' imprisonment, three years of supervised release, and a $100 mandatory special assessment.

Respectfully submitted this 14th day of September, 2016,

LORETTA E. LYNCH
United States Attorney General
EILEEN M. DECKER
United States Attorney
Central District of California

 /s/
Annamartine Salick
William Crowfoot
Special Attorneys

---

[1] Defendant's statements are recorded in the investigative reports previously provided to the U.S. Probation Office and defendant.  The government will make the reports available for the Court's review at the sentencing hearing.

[2] Defendant does not allege that any U.S. law enforcement agents were present for, aware of, or in any way involved in any of the treatment described in his sentencing position.

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of September, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrant:

Joy Bertrand Esq.
Attorney for the Defendant

/ s/ _____
Annamartine Salick

- 6 -